Melissa H. Legault (SBN 034775)
melissa.legault@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

YOUGOV AMERICA INC.,

Plaintiff,

v.

SCOTT HOROWITZ,

Defendant.

Case No._____

**COMPLAINT**

**JURY TRIAL DEMANDED**

NOW COMES Plaintiff YouGov America Inc. ("YouGov" or the "Company"), by its attorneys, Squire Patton Boggs (US) LLP, for its Complaint against defendant Scott Horowitz ("Defendant") states:

## <u>NATURE OF THE CASE</u>

This is an action for damages (including attorneys' fees) resulting from Defendant's breach of his agreements with YouGov containing return of property, confidentiality, and non-solicitation provisions, as well as his breach of the duty of loyalty and misappropriation of trade secrets, and to enjoin Defendant from further use, misappropriation, or dissemination of YouGov's trade secrets and confidential information improperly retained and/or copied by Defendant. Despite requests and attempts from YouGov to recover its valuable information and property, Defendant has either refused or failed to comply with such demands, making judicial intervention essential for the protection of the Company.

**PARTIES, JURISDICTION AND VENUE**

1.      YouGov is a Delaware corporation and maintains its principal place of business at 999 Main Street, Suite 101, Redwood City, California 94063.

2.      Defendant, upon information and belief, resides at 22821 N. 39th Run, Phoenix, Arizona 85050.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1332.

4.      Venue of this action in this court is proper pursuant to 28 U.S.C. § 1391(b).

**CLAIMS FOR RELIEF**

5.      YouGov is a research data and analytics technology group that supports a wide spectrum of marketing activities including media owners, brands, and media agencies and helps clients gain valuable insights on markets, opinions, and consumer preferences by polling its proprietary panel of over 20 million registered members across the world.

6.      On October 26, 2017, YouGov offered Defendant the position of Chief Revenue Officer – Sports, which he held until on or around March 18, 2022.

7.      By accepting employment with YouGov, Defendant agreed to the terms and conditions in his offer letter (attached hereto as **Exhibit A**) as well as the terms and conditions in the Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement") (attached hereto as **Exhibit B**), which he signed on November 20, 2017.

8.      During the course of Defendant's employment with YouGov, he was given access to high level confidential, trade secret, and other proprietary information relating to YouGov's business, including but not limited to technical data, trade secrets and know-how, such as research, product plans, products, services, suppliers, customer lists, information not known by actual or potential competitors of YouGov or third parties not under confidentiality obligations to YouGov, and proprietary information of YouGov and its customers and suppliers.

9.    YouGov has taken reasonable efforts to protect the secrecy of this information, including by requiring the return of Company Property, as outlined in the following provision contained in Defendant's offer letter:

> Company Property. During and after your employment, you will not use any Company Property for any purpose other than for the benefit of the Company. Except for business uses related to the performance of your job, you will not remove from the Company premises any Company Property without written consent of your supervisor. In the event of your termination of employment, or at any time at the request of the Company, you will return all Company Property. You will also return all copies of Company Property, and any Work Product derived from Company Property. "Company Property" means Trade Secrets of YouGov, Work Product, customer lists, prospect lists, forms, manuals, records, correspondence, contracts, notes, memoranda, notebooks and other documents of the Company, software media, equipment, and other intangible and tangible property owned by the Company. The foregoing is in furtherance and not in limitation of any additional confidentiality agreement you may execute for the benefit of YouGov.

10.    In addition to this provision contained in his offer letter, Defendant was required to execute the Confidentiality Agreement, which includes confidentiality, non-disclosure, and non-solicitation obligations.

11.    Under the Confidentiality Agreement, Defendant had an obligation at all times during his employment with YouGov and thereafter to hold in strictest confidence and not to use or disclose to any third party any Confidential Information. Further, he was not to make copies of such Confidential Information.

12.    Pursuant to the Confidentiality Agreement, "Confidential Information" means "any Company proprietary information, technical data, trade secrets or know-how, including but not limited to research, product plans, products, services, suppliers, customer lists and customers." It also includes "information pertaining to any aspect of the Company's business which is either information not known by actual or potential competitors of the Company or third parties not under confidentiality obligations to the

Company, or is otherwise proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise."

13. In addition, under the Confidentiality Agreement, Defendant agreed that during the term of his relationship with YouGov and for a period of six (6) months immediately following the termination thereof, he would not "directly or indirectly solicit, induce, recruit or encourage any of YouGov's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit or take away employees or consultants of the Company either for himself or for any other person or entity."

14. Defendant also agreed that during his relationship with YouGov and at any time following the termination of his relationship therewith, he would not "use any Confidential Information of the Company to attempt to negatively influence or attempt to influence any client, customer or other person either directly or indirectly, to direct his or its purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company."

15. Other steps YouGov has taken to protect the confidentiality of its documents and information include: classifying levels of information and limiting access to those individuals with a need to know the information by requiring users to request and be granted access to the information; requiring that employees execute confidentiality and non-disclosure agreements (such as the Confidentiality Agreement); password protecting databases and devices and requiring password changes every 180 days; adopting written policies governing employee use of YouGov's electronic information, such as the following Group policies: Data Protection Policy, Data Protection & Security Training Policy, IT Security & Acceptable Use Policy, Password Policy, Removable Media Policy, Mobile Device Policy, Information Classification Policy, and Access Control Policy; and taking other steps designed to further protect intellectual property and confidential and proprietary information.

16. YouGov allowed Defendant use of its property and gave him access to its confidential and proprietary information for the sole purpose of doing his job, and his access

and use of such information was conditional on their compliance with the terms and conditions outlined in his offer letter, Confidentiality Agreement, and YouGov's policies relating to confidential and proprietary information.

17.     This information and knowledge, in the hands of a competitor, would unfairly deprive YouGov of its competitive advantage. The dissemination or misuse of the information would also cause severe damage to YouGov's position and credibility in the marketplace.

18.     On October 21, 2021, while still employed at YouGov, Defendant, in conjunction with his colleague Tracy Schoenadel, formed OPN Research LLC using Ms. Schoenadel's own home address in Connecticut. Under "Principal Details," the Connecticut Registrar listed Defendant and Ms. Schoenadel as well as two other current employees of YouGov. OPN Research LLC was later dissolved on March 18, 2022, and the Agent Resignation was filed on May 12, 2022.

19.     On March 16, 2022, Ms. Schoenadel resigned from YouGov, and her last working day was that same day.

20.     Also on March 8, 2022, Defendant resigned from YouGov, and he was placed on garden leave on March 9, 2022. His last day of employment with YouGov was March 18, 2022.

21.     In addition, two other employees, Chris Todd and Jordan Deitch, both resigned in March 2022. They were also placed on garden leave on March 9, 2022, and their last day of employment with YouGov was March 18, 2022.

22.     Upon information and belief, this mass-resignation was the result of Defendant soliciting YouGov employees to leave YouGov and join him at his new competing company, Vision Insights.

23.     To date, YouGov has not been able to ascertain where Vision Insights is incorporated or registered, but upon information and belief, the address for Vision Insights is 1333 Broadway, 4th Floor, New York, New York 10018 and the web address for the company is https://www.visioninsights.net/.

24.    On May 12, 2022, Vision Insights was featured in an article on the Sports Business Journal website entitled "Two former YouGov execs leave to form new shop Vision Insights." https://www.sportsbusinessjournal.com/Daily/Issues/2022/05/12/People-and-Pop-Culture/Vision-Insights.aspx, attached as **Exhibit C**. According to the article, Vision Insights is "designed to help properties and brands maximize their sports and entertainment marketing investments."

25.    According to the article and Vision Insights' website, Defendant is the Chief Executive Officer of Vision Insights, and Ms. Schoenadel is the Chief Operating Officer. In addition, former YouGov employee Mr. Todd is identified in the article and on Vision Insights' website as the company's Senior VP, Sales & Marketing, and former YouGov employee Mr. Deitch is listed as the Director of Business Development.

26.    Vision Insights targets the exact same types of clients as YouGov services in the sports industry.

27.    In fact, in the Sports Business Journal article, Defendant was quoted as claiming that Vision Insights "has signed the Bears, Globe Life Insurance and a MLB client, and is close to finalizing a partnership with the tourism division of a municipality," each of which are current YouGov clients.

28.    Upon information and belief, when Defendant referred to the "Bears" he was referring to National Football League team and YouGov client the "Chicago Bears."

29.    Upon information and belief, when Defendant referred to "Globe Life Insurance" he was referring to YouGov client "Globe Life and Accident Insurance Company."

30.    Upon information and belief, when Defendant referred to "the tourism division of a municipality" he was referring to YouGov client "Hawaiian Tourism Authority."

31.    Upon information and belief, when Defendant referred to "a MLB client" he is referring to one of YouGov's clients that is a Major League Baseball team.

32.    Upon discovering that Defendant started a competing business and that former YouGov employees, Ms. Schoenadel, Mr. Todd, and Mr. Deitch, were now employees of that competing business, YouGov hired a third party vendor, the Computer Forensics Practice, LLC ("CFP"), to conduct a forensic examination of Defendant's YouGov laptop.

33.    CFP's examination of Defendant's YouGov devices and accounts revealed that, in the months prior to his resignation, Defendant forwarded at least nine emails from his YouGov email address to his personal Outlook email address. One of those emails, sent on February 1, 2022 – approximately a month before he resigned – included a spreadsheet titled "!!!Client Contacts Master Document.xlsx," which contained a list of YouGov's clients as well as contact information and other details about the client.

34.    Further, CFP observed the use of a personal Dropbox account on Defendant's YouGov computer. In the Dropbox, there was over 3,600 files, almost all of which were YouGov files that were last accessed by Defendant on March 9, 2022 – the day after he gave notice of his resignation and was placed on garden leave. Based on the names of the files present in the Dropbox, it is clear Defendant retained a multitude of YouGov's proprietary commercial information such as client contracts and statements of work, prospect pitch presentations and templates, client deliverables presentations and templates, pricing calculators, methodology documentation and other confidential Company information.

35.    Under YouGov's IT & Acceptable Use Policy, use of a personal Dropbox is prohibited unless approved by the head of IT or required by specific YouGov clients. Defendant's use of a personal Dropbox was not approved by the head of IT nor was it required by a specific YouGov client.

36.    On July 6, 2022, YouGov sent cease and desist letters to Defendant and Ms. Schoenadel reminding them of their post-termination obligation to YouGov. Further, the letters demanded that they: (1) Immediately cease and desist any and all activity that is in violation of the obligations to YouGov; (2) Confirm in writing that they will do so no later

than Wednesday July 13, 2022; and; (3) Send all Company Property and/or Confidential Information they have in their possession, custody, and/or control back to YouGov no later than Wednesday July 13, 2022, accompanied by a signed declaration confirming they have not used, provided, or disclosed YouGov's confidential or proprietary information and they will continue to adhere to their post-employment obligations to YouGov.

37.    YouGov also sent a cease and desist letter to Vision Insights on July 6, 2022, informing the Company about Defendant's obligations to YouGov. Further, the letter demanded that Vision Insights: (1) Immediately cease and desist any and all activity that is in violation of Defendant's obligations to YouGov; (2) Confirm in writing that it will do so no later than Wednesday July 13, 2022; and; (3) Send all Company Property and/or Confidential Information it has in its possession, custody, and/or control back to YouGov no later than Wednesday July 13, 2022, accompanied by a signed declaration confirming it has not used, provided, or disclosed YouGov's confidential or proprietary information and they will continue to adhere to their post-employment obligations to YouGov.

38.    On July 13, 2022, Vision Insights, by and through its counsel, Alan Goudiss of Shearman & Sterling LLP, responded to YouGov's cease and desist letters to Vision Insights, claiming that Vision Insights is conducting an inquiry into the allegations contained in YouGov's letters, and agreed that should Vision Insights determine that information or data belonging to YouGov is in the possession of Vision Insights, Defendant, or Ms. Schoenadel, it will make arrangements to ensure the return or destruction of such information.

39.    To date, Defendant has not provided any written assurance that he has not used YouGov's confidential information or solicited YouGov's clients on behalf of Vision Insights.

40.    YouGov's confidential and trade secret information would be highly valuable to a number of other companies, including its most significant competitors and/or those seeking to compete against the Company, such as Vision Insights.

41.     Based on Defendant's activities and conduct, he appears to believe he is unrestrained in the retention, use or disclosure of YouGov's confidential and trade secret information for their own personal gain, for the benefit of a different company or to otherwise harm YouGov.

**COUNT I**
**(VIOLATIONS OF DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. §**
**1836(b)(1))**

42.     YouGov incorporates all preceding paragraphs of this Complaint as if fully restated herein.

43.     Defendant's actions, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

44.     Defendant possesses confidential information belonging to YouGov, including financial, business, employee, customer and strategic information that constitute trade secrets.

45.     Such information is used in connection with YouGov's business, which is conducted across the country and throughout the world.

46.     YouGov has taken reasonable measures to keep its proprietary information secret by classifying levels of information and limiting access to those individuals with a need to know the information by requiring users to request and be granted access to the information; requiring that employees execute confidentiality and non-disclosure agreements (such as the Confidentiality Agreement); password protecting databases and devices and requiring password changes every 180 days; adopting written policies governing employee use of YouGov's electronic information, such as the following Group policies: Data Protection Policy, Data Protection & Security Training Policy, IT Security & Acceptable Use Policy, Password Policy, Removable Media Policy, Mobile Device Policy, Information Classification Policy, and Access Control Policy; and taking other steps designed to further protect intellectual property and confidential and proprietary information.

47.     Defendant was subject to obligations under his offer letter and Confidentiality Agreement that required he maintain the confidentiality of the information, required he return the information upon the termination of his employment, and prohibited him from using such information other than as necessary in the course of performing his duties for YouGov and as authorized by YouGov.

48.     The information Defendant retained derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Defendant knew or should have known the files retained by him contain trade secrets belonging to YouGov.

49.     After his resignation, Defendant had no right to retain or use any of YouGov's trade secrets or any other files, including those saved on his personal Dropbox account and the emails he forwarded to his personal email address from his YouGov email address.

50.     Upon information and belief, Defendant knowingly and improperly retained and used YouGov's trade secrets and confidential information in violation of his offer letter and Confidentiality Agreement.

51.     Upon information and belief, Defendant is retaining and using that information to compete with and/or to otherwise harm YouGov.

52.     YouGov did not consent to Defendant's use of its confidential information.

53.     Defendant knew at the time he took and retained YouGov's confidential files that YouGov did not consent to those actions.

54.     Defendant's conduct constitutes knowing, willful, and malicious misappropriation.

55.     As a result of Defendant's actions, YouGov has suffered direct and consequential damages, and is entitled to recover compensatory damages, attorneys' fees, and other damages in an amount to be proven at trial.

**COUNT II**
**(<u>BREACH OF CONTRACT</u>)**

56.     YouGov incorporates all preceding paragraphs of this Complaint as if fully restated herein.

57.     Defendant's actions, as set forth herein, constitute a breach of the Confidentiality Agreement and his obligations under his offer letter.

58.     YouGov satisfied all relevant obligations to Defendant under the Confidentiality Agreement and offer letter.

59.     In the Confidentiality Agreement, Defendant agreed during his employment and thereafter to hold in strictest confidence and not to use or disclose to any third party any Confidential Information. Further, he was not to make copies of such Confidential Information.

60.     Defendant further agreed in his offer letter to return all such property and information to YouGov upon the termination of his employment or at any time at the request of the Company.

61.     Defendant also agreed he would treat YouGov information in a confidential manner and not use it outside the scope of his employment without prior written consent of YouGov.

62.     In addition, Defendant agreed that during the term of his relationship with YouGov and for a period of six (6) months immediately following the termination thereof, he would not directly or indirectly solicit, induce, recruit or encourage any of YouGov's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit or take away employees or consultants of the Company either for himself or for any other person or entity.

63.     Defendant also agreed that during his relationship with YouGov and at any time following the termination of his relationship therewith, he would not use any Confidential Information of the Company to attempt to negatively influence or attempt to influence any client, customer or other person either directly or indirectly, to direct his or

its purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company.

64.     Defendant's failure to return and continued possession and use of YouGov's information and property constitutes breach of the terms of his offer letter and the Confidentiality Agreement.

65.     Defendant's failure to return and continued possession and use of YouGov's information and property following YouGov's demand for its return constitutes breach of the Confidentiality Agreement and his offer letter.

66.     Upon information and belief, Defendant has obtained for improper use, retained, and disclosed or will soon be disclosing confidential information (or copies thereof) for his new business, Vision Insights, all in breach of the Confidentiality Agreement and his offer letter.

67.     Upon information and belief, Defendant has also breached the Confidentiality Agreement by soliciting YouGov clients, including but not limited to the Chicago Bears, Globe Life and Accident Insurance Company, and Hawaiian Tourism Authority to his new company, Vision Insights.

68.     Upon information and belief, Defendant has also breached the Confidentiality Agreement by soliciting YouGov employees – Ms. Schoenadel, Mr. Todd and/or Mr. Deitch – to his new company, Vision Insights.

69.     If Defendant's continued breach of the Confidentiality Agreement and terms of his offer letter is not enjoined, YouGov will suffer substantial and irreparable injury to its business for which it has no adequate remedy at law.

70.     As a direct and proximate result of Defendant's breach of contract, YouGov has suffered and/or will suffer damages in an amount in excess of $75,001.00.

## COUNT III
## (BREACH OF DUTY OF LOYALTY)

71.     YouGov incorporates all preceding paragraphs of this Complaint as if fully restated herein.

72.     Defendant's actions, as set forth herein, constitute a breach of the duty of loyalty.

73.     During his employment by YouGov, Defendant owed YouGov a duty of loyalty.

74.     Although Defendant was free to resign his employment and accept employment with a competitor, his duty of loyalty prevented him from using YouGov's equipment, employees, and compensated work hours while still employed by YouGov to misappropriate Confidential Information and Company Property.

75.     Specifically, Defendant breached his duty of loyalty by acting against YouGov's interests while still employed, such as by forwarding emails containing YouGov's Confidential Information and Company Property from his YouGov email account to his personal email account and saving over 3,600 YouGov files on his personal Dropbox, for use at his new company, Vision Insights. Based on the foregoing actions, upon information and belief, Defendant was engaged in actual competition with YouGov while still employed.

76.     YouGov was unaware of, and did not give consent to, Defendant's deceptive conduct.

77.     As a direct and proximate result of Defendant's breach of the duty of loyalty, YouGov has suffered and/or will suffer damages in an amount in excess of $75,001.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1.     That the Court specifically enforce the Confidentiality Agreement and offer letters;

2.     That Defendant be preliminarily and permanently enjoined from possessing and actual or threatened use and misappropriation of YouGov's trade secrets;

3.     That Defendant be preliminarily and permanently required to return to YouGov and certify to the Court that he has permanently deleted any and all confidential information and property, including client lists, contracts and statements of work, prospect

pitch presentations and templates, client deliverables presentations and templates, pricing calculators, methodology documentation, and other confidential Company information in their possession;

4.      That YouGov be permitted thereafter to supervise the permanent deletion from any of Defendant's hard drives, cloud drives, Dropbox, or other locations the wrongfully retained Company Property and misappropriated trade secret and proprietary information and that Defendant be ordered to delete all such information permanently;

5.      That Defendant be preliminarily and permanently required to identify to YouGov all persons to whom any YouGov trade secret and proprietary information in their possession or under their watch has been transferred since his resignation;

6.      That Defendant be compelled to pay to YouGov any damages arising from his conduct which are in excess of $75,001.00;

7.      That YouGov be awarded damages for any loss occasioned by the misappropriation of trade secrets and/or breach of contract;

8.      That YouGov be awarded punitive or exemplary damages for Defendant's willful and malicious misappropriation of trade secrets; and

9.      That YouGov be granted its costs of suit together with reasonable attorneys' fees and such other and further relief as the court deems appropriate.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.


RESPECTFULLY SUBMITTED this 17th day of August, 2022.

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Melissa H. Legault*
Melissa H. Legault
*Attorneys for Plaintiff*

# EXHIBIT A



October 26, 2017


<u>VIA EMAIL:</u>
Scott Horowitz
28316 N 44th way
Cave Creek, AZ 85331

Dear Scott:

It is my pleasure to offer you the position of Chief Revenue Officer - Sports for YouGov America, Inc. ("YouGov" or the "Company"), reporting to Tracy Schoenadel or her designees. This letter will summarize important details of matters pertaining to your employment. Your start date will be November 29, 2017, unless another date is agree upon with your manager shortly after acceptance of this letter.

This position is full-time and is an exempt level position as defined by the Fair Labor Standards Act.  Full-time hours, for pay purposes, means that you work regularly and consistently 40 hours each week. Employees are expected to work and be available "core hours" each day between 10am and 4pm. You and your manager can finalize your work schedule based upon these requirements.

<u>Compensation</u>: Your base salary will be $9,083.33 per pay period, $218,000 annualized. We are paid twice per month, on the 15th and last day of the month.  For FY17 (8/1/17 – 7/31/18), you will be eligible for a target bonus based upon meeting agreed-upon goals (see separate bonus agreement).  Your goals will be discussed and developed with you shortly after you begin.  You will be eligible for commissions starting after a 90 day probationary period.  Further information on commission payments will be provided by your manager shortly after you are eligible.

<u>Expenses</u>. The Company will reimburse you for reasonable and necessary expenses incurred by you in furtherance of YouGov's business. All expenses claimed are subject to the review and approval of your supervisor. Records must be maintained and submitted for any expenses to be reimbursed - including destination for auto mileage totals and receipts for all other items. Use of personal automobile for Company business will be reimbursed at the applicable IRS rate in effect per mile. We will provide you with the proper equipment for business use.

<u>Company Property</u>. During and after your employment, you will not use any Company Property for any purpose other than for the benefit of the Company. Except for business uses related to the performance of your job, you will not remove from the Company premises any Company Property without written consent of your supervisor. In the event of your termination of employment, or at any time at the request of the Company, you will return all Company Property. You will also return all copies of Company Property, and any Work Product derived from Company Property. "Company Property" means Trade Secrets of YouGov, Work Product, customer lists, prospect lists, forms, manuals, records, correspondence, contracts, notes, memoranda, notebooks and other documents of the Company, software media, equipment, and other intangible and tangible property owned by the Company.  The foregoing is in furtherance and not in limitation of any additional confidentiality agreement you may execute for the benefit of YouGov.

<u>Confidential Information and Invention Assignment Agreement</u>. You hereby agree to execute and deliver YouGov's form of Confidential Information and Invention Assignment Agreement and to be bound by the



restrictive covenants contained therein, including without limitation the non-solicitation and non-competition provisions contained therein.

<u>At Will Employment</u>. As YouGov is the Company for which you will perform service, we will retain the right to control and direct your work, its results, and the manner and means by which your work is accomplished. Your employment with the Company is at will, and therefore, may be terminated by you or the Company at any time and for any reason, with or without cause, and with or without notice. This "at will" employment relationship may not be modified by any oral or implied agreement.

<u>Additional Benefits</u>.  You will accrue four weeks (160 hours) of vacation, at the accrual rate of 3.33 hours per pay period. Vacation accrual will increase after 24 months of service and then again after 60 months of service with the Company, as outlined in the YouGov employee handbook. You will also be eligible for sick and floating holiday hours. YouGov offers medical, dental, and vision insurance the first of the month following your start date of employment. Flexible spending accounts are also available. Group short-term and long-term disability insurance is paid by YouGov. Company also may match up to 100% of your contribution to the 401K plan up to 3%. More details on all these plans will be provided to you.  The terms of all benefits plans are subject to change at YouGov's discretion.

As required by law, this offer is subject to satisfactory proof of your right to work in the United States and to results of background checks satisfactory in the Company's discretion (which background checks may be performed at any time before or following the date your employment commences).  By accepting this offer, you represent and warrant that your employment with the Company will not violate any agreement, obligations or understandings that you may have with any third party or prior employer.

You may indicate your acceptance of this offer by signing on the appropriate space indicated below and returning to us a signed copy of the Confidential Information and Invention Assignment Agreement. We are all excited about the opportunity to work with you.

Sincerely,

Kristine Medina
Human Resources Business Partner

**I accept the above terms of employment as stated:**

_____            _____
Scott Horowitz                                                          Date

# EXHIBIT B

## CONFIDENTIAL INFORMATION AND
## INVENTION ASSIGNMENT AGREEMENT

As a condition of my becoming employed (or my employment being continued) by YouGov America, Inc., a Delaware corporation (including for purposes of this Agreement its parents, subsidiaries and affiliates, the "Company"), I agree to the following:

1.    **Employment Relationship.** This Agreement does not alter, amend or expand upon any rights I may have to continue in the employ of the Company under any existing agreements between the Company and me or under applicable law.

2.    **Duties**. I will perform for the Company such duties as may be designated by the Company from time to time. I will devote my best efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without the prior written consent of the Company.

3.    **At-Will Relationship.** I understand and acknowledge that my relationship with the Company is and shall continue to be at-will, as defined under applicable law, meaning that either I or the Company may terminate my employment at any time for any reason or no reason, without further obligation or liability.

4.    **Confidential Information.**

(a)    **Company Information.** I agree at all times during the term of my employment with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company, or to disclose to any third party without written authorization of the Company, any Confidential Information of the Company. I further agree not to make copies of such Confidential Information except as authorized by the Company. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, suppliers, customer lists and customers. I understand that Confidential Information includes, but is not limited to, information pertaining to any aspect of the Company's business which is either information not known by actual or potential competitors of the Company or other third parties not under confidentiality obligations to the Company, or is otherwise proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise. I further understand that Confidential Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b)    **Prior Obligations.** I represent that my performance of all terms of this Agreement as an employee or consultant of the Company has not breached and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior or subsequent to the commencement of my employment by the Company.

(c)    **Third Party Information.** I recognize that the Company has received and in the future will receive confidential or proprietary information from third parties subject to a duty

on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

5.    **Inventions.**

(a)    **Inventions Retained and Licensed.** If, in the course of my employment with the Company, I incorporate into a Company product, process or machine a prior invention owned by me or in which I have an interest, the Company is hereby granted and shall have a non-exclusive, royalty-free, irrevocable, perpetual, worldwide license (with the right to sublicense) to make, have made, copy, modify, make derivative works of, use, sell and otherwise distribute such prior invention as part of or in connection with such product, process or machine.

(b)    **Assignment of Inventions.** I agree that I will promptly make full written disclosure to the Company and hereby assign to the Company all my right, title and interest in and to any and all inventions, original works of authorship, developments, concepts, know-how, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, during the period of my employment with the Company (collectively referred to as "Inventions"), except as provided in Section 5(c) below. I further acknowledge that all Inventions which are made by me (solely or jointly with others) within the scope of and during the period of my employment by the Company are "works made for hire" (to the greatest extent permitted by applicable law) and are compensated by my salary (if I am an employee) or by such amounts paid to me under any applicable consulting agreement or consulting arrangements (if I am a consultant).

6.    **Non- Solicitation of Employees, Consultants and Other Parties and Non-Competition.** I agree that during the term of my relationship with the Company, and for a period of six (6) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity. Further, during my relationship with the Company and at any time following termination of my relationship with the Company for any reason, with or without cause, I shall not use any Confidential Information of the Company to attempt to negatively influence any of the Company's clients or customers from purchasing Company products or services or to solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct his or its purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company.

7.    **General Provisions.**

(a)    **Governing Law.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State in which I primarily conduct work, without giving effect to the principles of conflict of laws.

-2-

(b)    **Entire Agreement.**  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

(c)    **Remedies**.  I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

(d)    **ADVICE OF COUNSEL.**  I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

(e)    **Not an IRS "Confidential Transaction"**.  Notwithstanding anything in this Agreement or in any other written or oral understanding or agreement to which the parties hereto are parties or by which they are bound, either the Company or I (or either of our representatives, agents or employees) may consult any tax advisor regarding the tax treatment and tax structure of the transaction contemplated by this Agreement and may at any time disclose to any person, without limitation of any kind, the tax treatment and tax structure of such transaction and all materials (including opinions or other tax analyses) that are provided relating to such treatment or structure.    The preceding sentence is intended to satisfy the requirements for the transaction contemplated herein to avoid classification as a "confidential transaction" in accordance with Treasury Regulations Section 1.6011-4(b)(3) and shall be interpreted consistent with such intent.

This authorization is not intended to permit disclosure of any other information relating to any transaction contemplated by the employment relationship, including (without limitation) (i) any portion of any materials to the extent not related to the tax treatment or tax structure of any such transaction, (ii) the identities of participants or potential participants in any such transaction, (iii) the existence or status of any negotiations, (iv) any pricing or financial information (except to the extent such pricing or financial information is related to the tax treatment or tax structure of any such transaction), or (v) any other term or detail not relevant to the tax treatment or the tax structure of any such transaction.

[Signature Page Follows]

-3-

The parties have executed this Agreement on the respective dates set forth below:

EMPLOYEE:

Scott Horowitz , an Individual:

Signature

Date: 11 · 20 · 2017

-4-

# EXHIBIT C

 

Data | Esports | Media | Executive Transactions | All Topics ▾ | Print    Daily Editions ▾ | Newsletters ▾ | Weekly Issue 8.01.2022 ▾    in ⌕ 🐦 ⊙ f

PEOPLE AND POP CULTURE

## Two former YouGov execs leave to form new shop Vision Insights

BY **DAVID BROUGHTON**
5.12.2022





— Scott Horowitz, who left Nielsen in late '17 to become YouGov's chief revenue officer, will serve as the new company's CEO

**SCOTT HOROWITZ** and **TRACY SCHOENADEL**, sports research veterans whose combined careers total four decades in the business, have formed their own shop, Vision Insights, designed to help properties and brands maximize their sports and entertainment marketing investments. Horowitz, who left Nielsen in late '17 to become YouGov's chief revenue officer, will serve as the new company's CEO. The Northern Arizona graduate also has worked for data companies Repucom and Navigate, as well as on the property side at the Suns and Harlem Globetrotters. Schoenadel joined YouGov in '15 after overseeing ESPN Sports Poll for 12 years and more than three years as VP of Kantar Media. The West Virginia alum is the new company's COO. Horowitz said Vision has signed the Bears, Globe Life Insurance and a MLB client, and is close to finalizing a partnership with the tourism division of a municipality. Two other execs have left YouGov to join the new company, which will be based in N.Y. Former MLB Giants minor leaguer **CHRIS TODD**, who spent time with Horowitz at YouGov, Nielsen, Repucom and Navigate and had a 20-month stint as Opendorse VP/Brand Partnerships, will serve as Senior VP/Sales & Marketing. **JORDAN DEITCH**, whose career began as a Nielsen client service intern, is Vision Insights Dir of Business Development.

